IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ELIO SERPA PLLC d/b/a WRA MIAMI,

      Plaintiff,

  v.

                               CASE NO. 1:25-cv-20314-RAR

WRA REAL ESTATE SOLUTIONS, LLC,
THIAGO DE ATAIDE, DEBORA ATAIDE,
AND G2B BUSINESS CORP.,

      Defendants.

## DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT

Defendants WRA Real Estate Solutions, LLC ("WRA RESLLC" or "WRA"), Thiago De Ataide ("Thiago Ataide"), Debora Ataide, and G2B Business Corp. ("G2B") (each, a "Defendant" and collectively, "Defendants"), by and through its undersigned counsel, hereby each amend their answers to the Amended Complaint filed by Elio Serpa PLLC d/b/a WRA Miami ("Plaintiff").

Defendants deny all allegations in the Amended Complaint [ECF No. 34] ("Amended Complaint") except for those specifically admitted below. With respect to the allegations made in the Amended Complaint, upon knowledge with respect to Defendants' own acts, and upon information and belief as to other matters, Defendants respond and allege as follows:

## NATURE OF THE ACTION

1.      This is, *inter alia*, a trademark action for injunctive relief, damages and declaratory relief. Serpa was a member of RESLLC. However, RESLLC's manager, Debora Ataide failed to make appropriate distributions to Serpa, and thereafter, Debora Ataide improperly attempted to remove Serpa as a member from RESLLC without compensating Serpa for its interest in RESLLC.

**Defendants' Response**: Defendants admit only that this is a trademark action for injunctive relief, damages, and declaratory relief. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

2.      This is also an action for fraud, as the Ataides have now taken the position that Serpa was never a member of RESLLC. Having taken such a position, it is now apparent that Thiago Ataide and Debora Ataide made knowingly false representations to Serpa, caused fraudulent corporate documents to be prepared, and presented fraudulent corporate documents to Serpa, all for the purpose of causing Serpa to contribute time, effort and monies to RESLLC.

**Defendants' Response:** Defendants admit only that Plaintiff was listed as a member in certain WRA RESLLC Annual Reports but deny that Plaintiff was ever granted an ownership interest in WRA RESLLC. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

3.      Serpa, in order to protect the goodwill that it was building up in "WRA Miami," took steps to protect that goodwill, including applying for an obtaining a federal trademark registration for the WRA Miami Trademark. A copy of that Federal Registration is attached as Exhibit 1.

**Defendants' Response:** Defendants admit only that Plaintiff fraudulently registered the Challenged Mark attached to Plaintiff's Amended Complaint as Exhibit 1. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

4.      At the time that Serpa registered the WRA Miami Trademark, Thiago Ataide not only knew that Serpa was taking steps to protect the goodwill associated with WRA Miami, and that Serpa was applying for the WRA Miami Trademark, but also, he encouraged Serpa to file said WRA Miami Trademark and did not object.

**Defendants' Response:** Defendants deny.

5.      Thereafter, Debra Ataide removed Serpa's name as a member of RESLLC from the Florida Secretary of State files, causing a dispute regarding Serpa's ownership interest in RESLLC. Thereafter, Thiago Ataide reversed his position and challenged Serpa's ownership of the WRA Miami federally-registered trademark.

**Defendants' Response:** Defendants admit that, after 2020, Plaintiff was removed from all subsequent Annual Reports associated with WRA RESLLC. Defendants otherwise deny all other allegations in this Paragraph not specifically admitted herein.

6.      Consistent with their prior wrongful conduct, Defendants have now attempted to effectively steal Serpa's federally-registered trademark through, inter alia, infringing conduct and a cancellation proceeding filed in the U.S. Patent and Trademark Office. As a result, Serpa also seeks injunctive relief and damages against the Defendants for infringement, and declaratory relief to resolve ownership of Serpa's federally-registered trademark

**Defendants' Response:** Defendants admit that WRA RESLLC instituted a cancellation proceeding before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office. Defendants otherwise deny all other allegations in this Paragraph not specifically admitted herein.

## PARTIES:

7.      Serpa is a Florida limited liability company. Serpa has an office in Miami, Florida.

**Defendants' Response**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

8.      RESLLC is a Florida limited liability company with its principal place of business in Orlando, Florida.

**Defendants' Response**: Admit.

9.      Thiago Ataide is an individual. Upon information and belief, Thiago Ataide was a member of RESLLC at all times relevant to this action and, on information and belief, resides in the Orlando, Florida area.

**Defendants' Response**: Admit.

10.      Debora Ataide was the manager of RESLLC when Serpa became a member of RESLLC, and is still the manager of RESLLC. Upon information and belief, Debora Ataide is the spouse of Thiago Ataide, and, on information and belief, she also resides in Orlando, Florida area.

**Defendants' Response**: Defendants admit Debora Ataide was the manager of WRA RESLLC when Plaintiff was listed as a member of WRA RESLLC on the 2017 Amended Annual Report. Otherwise denied.

11.      G2B is a Florida corporation with its principal place of business in Orlando, Florida. G2B is a member of RESLLC, and the Ataides are officers of G2B. Upon information and belief, the Ataides own G2B.

**Defendants' Response**: Admit.

## JURISDICTION AND VENUE

12.      This action arises out of Defendants' infringement of Serpa's federally-registered trademark. This Court has original subject matter jurisdiction pursuant 15 U.S.C. §1116, 1121 and 28 U.S.C. §1338.

**Defendants' Response**: Defendants admit only that the Court has subject matter jurisdiction over Plaintiff's trademark infringement claim but deny that they have undertaken acts that would

4

support jurisdiction pursuant to 15 U.S.C. §1116. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

13.     This is also an action for declaratory relief arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Lanham Act, 15 U.S.C. §1051 *et seq*.

**Defendants' Response**: Defendants admit only that Plaintiff seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C §§ 2201 and 2202 and the Lanham Act, 15 U.S.C. §1051 et seq. Otherwise denied.

14.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367, as those claims are inextricably intertwined with the federal claims and arise from the same common nucleus of operate fact as the federal claims.

**Defendants' Response**: Defendants deny.

15.     Venue is proper under 28 U.S.C. §§1391 and 1400 as, upon information and belief, a substantial part of the events giving rise to the claim occurred in this District.

**Defendants' Response:** Defendants deny.

## GENERAL ALLEGATIONS

### Serpa Becomes a Member of RESLLC

16.     Serpa's principal, Elio Serpa ("Elio Serpa"), met Thiago Ataide sometime prior to September, 2016.

**Defendants' Response**: Admit.

17.     In or about September, 2016, one of Elio Serpa's other companies, Elio Serpa Real Estate P.A., entered into a contractual relationship with RESLLC.

**Defendants' Response:** Defendants WRA RESLLC and Thiago Ataide admit that Defendant WRA RESLLC, as a broker, entered into an Independent Contractor Agreement with Elio Serpa

PA, as a contractor, on September 14, 2016. *See* Exhibit 1 attached to this Amended Answer (this "Answer"). Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

18.     As the relationship between Elio Serpa and Thiago Ataide progressed, the two decided to formally go into business together so that RESLLC could expand its business.

**Defendants' Response**: Defendants deny.

19.     In or about early 2017, Serpa was invited to become a member of RESLLC in exchange for sweat equity, and Serpa signed an Amendment to RESLLC's Operating Agreement in early 2017. RESLLC reflected Serpa's newly acquired interest in RESLLC through, inter alia, filings that RESLLC made with the Florida Department of State, beginning with an Amended Annual Report dated April 28, 2017 listing Serpa as a member of RESLLC. A copy of RESLLC's Amended Annual Report dated April 28, 2017 is attached as Exhibit 2.

**Defendants' Response:** Defendants admit that, following a request from Plaintiff's principal, Elio Serpa, Plaintiff was listed as a member in certain WRA RESLLC Amended Annual Reports, such as Exhibit 2 to the Amended Complaint, based on a mutual understanding between Defendant Thiago Ataide and Plaintiff's principal, Elio Serpa, that Plaintiff would not receive any ownership interest in WRA RESLLC. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

20.     Serpa's interest in RESLLC was also publicly disclosed in RESLLC's Annual Reports for 2018, 2019 and 2020, copies of which are attached as Exhibits 3, 4 and 5.

**Defendants' Response:** Defendants deny Plaintiff ever had an ownership interest in WRA RESLLC. Defendants admit that Plaintiff was listed as a member of WRA RESLLC in certain Annual Reports, such as Exhibits 2, 3, 4, and 5 attached to Plaintiff's Amended Complaint.

21.     However, it quickly became apparent that Serpa was expected to contribute more than just sweat equity. Serpa requested to pay for the preparation of the paperwork pursuant to which Serpa became a member of RESLLC. Serpa also paid for various marketing and advertising efforts on behalf of RESLLC. During the period of time that Serpa was listed as a member of RESLLC, it paid tens of thousands of dollars, if not more, on behalf of RESLLC.

**Defendants' Response:** Defendants admit Plaintiff was financially responsible for "marketing" expenses pursuant to the Miami Branch Agreement attached to Plaintiff's Amended Complaint as Exhibit 6. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

22.     As a managing member of the LLC, Debora Ataide was aware of Serpa's investments in RESLLC. Indeed, Debora Ataide was aware of Serpa's involvement in RESLLC, as she is the one who signed the Amended Annual Report filed with the Florida Secretary of State on April 28, 2017 listing Serpa as a member of RESLLC, and the Annual Reports for 2018, 2019, and 2020. *See* Exhibits 2, 3, 4 and 5. Debora Ataide was also copied on e-mails relating to the Amendment to RESLLC's Operating Agreement, pursuant to which Serpa acquired an ownership interest in RESLLC.

**Defendants' Response:** Defendant Debora Ataide admits that she signed the 2017 Amended Annual Report and the 2018, 2019, and 2020 Annual Reports attached to Plaintiff's Amended Complaint as Exhibits 2, 3, 4, and 5, respectively. Defendant Debora Ataide admits that she was copied on e-mails regarding a request to amend WRA RESLLC's Operating Agreement but denies that Plaintiff acquired an ownership interest in WRA RESLLC pursuant to such emails or otherwise. Defendants further and otherwise deny all allegations in this Paragraph not specifically admitted herein.

**Business Expansion: WRA Miami**

23.     Sometime in 2019, at Serpa's urging, RESLLC considered opening a business location in Miami, Florida. However, the Ataides did not want to be financially responsible for the expense and risk associated with opening a new location, and decided that RESLLC would not make such an investment. As a result, Thiago Ataide and Elio Serpa entered into a Miami Branch Agreement, a copy of which is attached as Exhibit 6. Thiago Ataide and Elio Serpa signed the Miami Branch Agreement on December 13, 2019.

**Defendants' Response**: Defendant Thiago Ataide admits that he and Plaintiff's principal, Elio Serpa, entered into, and executed, a Miami Branch Agreement on December 13, 2019 (the "Miami Branch Agreement"). *See* Exhibit 2 to this Answer. Defendant Thiago Ataide admits that the purpose of the Miami Branch Agreement was to establish a branch office in Miami as an extension of Defendant WRA RESLLC, and not to create a new entity, as evidenced by Exhibit 3 to this Answer, which explicitly states Defendant WRA RESLLC has registered a "branch office" in connection with the Miami address at issue. Defendant Thiago Ataide further admits that, despite the fact that the Miami Branch Agreement did not authorize Plaintiff to create a new entity that reflects the WRA Marks without consent, Plaintiff, on its own accord and without any of the Defendants' knowledge or permission, created such an entity using the name WRA MIAMI BUSINESS & REAL ESTATE LLC as shown in Exhibit 4 to this Answer. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

24.     The Miami Branch Agreement divided responsibility for various aspects of the South Florida business operations between "WRA Orlando" and "WRA Miami." In addition, the Miami Branch Agreement established a framework for opening additional locations in South Florida. For example, the Miami Branch Agreement provides that "[i]f any investor wishes to

purchase a WRA Business & Real Estate license to use the company brand [in South Florida], [Elio Serpa] shall receive 30% of the license fee agreed upon between the investor and [Thiago Ataide]."

**Defendants' Response**: Defendant Thiago Ataide admits that the Miami Branch Agreement contains: (i) two sections titled "WRA Orlando" and "WRA Miami"; and (ii) the following quote, "[i]f an investor wishes to purchase a WRA Business & Real Estate *license* to use the company brand in the aforementioned counties, Elio Serpa shall receive 30% of the *license* fee agreed upon between the investor and Thiago Ataide," (emphasis added). Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

25.     To safeguard Elio Serpa's investment in WRA Miami's operations, the Miami Branch Agreement provides in relevant part that "WRA Orlando brokers may not utilize the WRA Miami structure without prior approval from" Elio Serpa.

**Defendants' Response**: Defendant Thiago Ataide admits that the Miami Branch Agreement states "WRA Orlando brokers may not utilize the WRA Miami structure without prior approval from Elio Serpa." Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

26.     Serpa provided the financial support for WRA Miami's operations.

**Defendants' Response**: Defendants admit that Plaintiff's principal, Elio Serpa, was solely responsible for the members associated with the WRA Miami team, in addition to any expenses that stem from said team members. Defendants otherwise deny.

27.     In or about 2020, Serpa began taking steps to protect the investment it made in WRA Miami, and to protect the goodwill that WRA Miami created in connection with its use of the WRA Miami trademark. These steps included registration of the trademarks associated with

WRA Miami. With Thiago Ataide's knowledge and consent, Serpa obtained a federal trademark registration for the trademark WRA BUSINESS & REAL ESTATE, U.S. Registration No. 6,651,766 (the "WRA Mark"). A copy of the federal registration for the WRA Mark is attached as Exhibit 1.

**Defendants' Response**: Defendants admit only that Plaintiff fraudulently registered the Challenged Mark attached to Plaintiff's Amended Complaint as Exhibit 1. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein, including, without limitation, that Defendant Thiago Ataide was aware or consented to Plaintiff's registration of the Challenged Mark.

28.      Pursuant to 15 U.S.C. § 1115, the federal registration for the WRA Mark is prima facie evidence of the validity of the WRA Mark, of Serpa's ownership of the WRA Mark, and of Serpa's exclusive right to use the WRA Mark in commerce.

**Defendants' Response**: This Paragraph consists of legal conclusions about Plaintiff's purported "ownership of" and "exclusive right to use" the Challenged Mark to which no response is required. Defendants admit only that Plaintiff is relying on 15 U.S.C. § 1115, which is subject to several defenses such as fraudulent registration and prior use. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

29.      Notwithstanding Around the same time, it became apparent that Thiago Ataide was not going to provide financial the support for WRA Miami consistent with the Miami Branch Agreement. That decision put Serpa in a difficult financial position. In an effort to defray the WRA Miami costs that Serpa was shouldering alone, Serpa's principal invited Geovana Heck to participate in the Miami Branch.

**Defendants' Response:** Defendant Thiago Ataide admits that he did not intend to provide financial support to Plaintiff beyond what was required in the Miami Branch Agreement. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

30.     To recognize Ms. Heck's involvement, Serpa's principal established a new corporate entity, WRA Miami Business & Real Estate LLC, with Ms. Heck and Serpa being members. In October, 2020, Serpa's principal and Ms. Heck then attempted to negotiate a new Miami Branch Agreement with Thiago Ataide. However, it quickly became clear from the negotiations that Thiago Ataide wanted increased control over WRA Miami while reducing his obligations. He also sought to marginalize Serpa's investment and the investment that Ms. Heck was prepared to make in WRA Miami. Ultimately, Thiago Ataide refused to sign new Miami Branch Agreement, and his conduct during the negotiations ultimately discouraged Ms. Heck from participating in WRA Miami.

**Defendants' Response:** Defendant Thiago Ataide admits that only one Miami Branch Agreement was executed by the parties, specifically, the Miami Branch Agreement attached to Plaintiff's Amended Complaint as Exhibit 6 and dated December 13, 2019. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

31.     Around the same time that Thiago Ataide sabotaged negotiations over a new Miami Branch Agreement, and with knowledge of Serpa's registration of the WRA Mark and interest in RESLLC, the Defendants began taking steps to improperly force Serpa out of RESLLC and began willfully infringing the WRA Mark.

**Defendants' Response:** Defendants deny.

### The Ataides' Wrongful Conduct

32.    In or about July 2022, Serpa discovered that it had been removed from RESLLC's filings with the Florida Department of State.

**Defendants' Response:** Defendants admit that, after 2020, Plaintiff was removed from all subsequent Annual Reports associated with WRA RESLLC. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph, such as when Plaintiff discovered it was not listed on WRA RESLLC Annual Reports, and therefore deny them.

33.    When Elio Serpa raised this issue with Thiago Ataide, Debora Ataide sent Elio Serpa a message claiming that it was her decision to inadvertently remove Serpa from RESLLC's Annual Reports, and via text messaegs, apologized for having done so (original text and translation set forth in the table below):

| Original Text Messages | Translation |
|---|---|
| **Debora Pontes**<br>Elio, a questão de tirar seu nome foi uma decisão minha, após várias coisas administrativas. Não foi falta de palavra dele não. Só pra fica claro. _4:58PM_<br><br>E não sabia que teria um peso tão grande _4:59PM_<br><br>Pq eh só um nome _4:59PM_<br><br>Ninguém fica olhando no Sunbiz _4:59PM_<br><br>Mas de qualquer forma, peço desculpas pessoalmente se atrapalhei o acordo de vcs dois _4:59PM_ | Elio [Serpa], the decision to remove your name was my own, after several administrative issues. It wasn't a lack of his [Thiago Ataide] word. Just to be clear.<br><br>And I didn't know it would have such a big impact.<br><br>Because it's just a name.<br><br>Nobody looks at it on Sunbiz.<br><br>But anyway, I apologize personally if I messed up your agreement. |

**Defendants' Response:** Defendant Debora Ataide admits only to the occurrence of the exchange between her and Elio Serpa that is translated above. Defendants otherwise deny all other allegations in this Paragraph, including, without limitation, any implication that Plaintiff was "inadvertently" removed from WRA RESLLC's Annual Reports.

34.     However, despite Debora Ataide's apology and claim that it was inadvertent and that Thiago Ataide had nothing to do with the change, RESLLC did not thereafter include Serpa in any of its Annual Reports or any further distributions. Upon information and belief, there was nothing inadvertent about Debora Ataide's removal of Serpa from RESLLC's Annual Reports.

**Defendants' Response**: Defendants deny that Plaintiff ever had an ownership interest in WRA RESLLC or was otherwise entitled to distributions from WRA RESLLC. Defendants admit only that, after 2020, Plaintiff was removed from all subsequent Annual Reports associated with WRA RESLLC, and in the exchange shown above in para. 33, Defendant Debora Ataide did not state removal of Plaintiff from WRA RESLLC's Annual Reports was inadvertent; in fact, Defendant Debora Ataide explicitly stated it was her "decision" to do so. Defendants further and otherwise deny all other allegations in this Paragraph.

35.     Ultimately, the Ataides treated Serpa as if it did not own any interest in RESLLC. Upon information and belief, Debora Ataide has neither accounted for nor distributed any monies from RESLLC to Serpa consistent with Serpa's ownership interest in RESLLC. Indeed, the Ataides have now admitted that Debora failed to distribute monies from RESLLC to Serpa. Instead, upon information and belief, the Ataides distributed monies from RESLLC to themselves and to G2B.

**Defendants' Response**: Defendants admit that Plaintiff neither owns or is otherwise entitled to any ownership interest in WRA RESLLC. Defendant Debora Ataide admits she has not distributed

any monies from WRA RESLLC to Plaintiff because Plaintiff does not have any ownership interest in WRA RESLLC. Defendants admit monies from WRA RESLLC were properly distributed. Defendants otherwise deny.

36.     As the relationships between Serpa and the Ataides soured, the Defendants also attempted to willfully steal the goodwill built up by Serpa and that was associated with the WRA Mark by using an infringing version of the Mark, and by filing a false trademark application for a confusingly similar mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

37.     On or about December 18, 2024, RESLLC falsely filed a trademark application for a mark confusingly similar to Serpa's WRA Mark (the "Infringing Mark"). A copy of RESLLC's trademark application is attached as Exhibit 7. In its trademark application, RESLLC: i) admitted under penalty of perjury that it was using the confusingly similar trademark in commerce, and ii) falsely stated that it was not aware of any other person or entity (such as Serpa) that had rights to the Mark.

**Defendants' Response**: Defendant WRA RESLLC admits only that it filed its long-standing mark consisting of two curved lines with buildings and houses on the top line, inside a circle with the wording "WRA" on the right side of the design for use in connection with the management, sale, marketing, and advertising of real estate services in Class 36, attached as Exhibit 7 to Plaintiff's Amended Complaint. Defendant WRA RESLLC's distinctive service mark "WRA" and several associated logos, including, without limitation, the mark shown in Exhibit 7 to Plaintiff's Amended Complaint, shall hereinafter be referred to as the "WRA Marks." This Paragraph otherwise consists

of legal conclusions to which no response is required. Defendants further deny all allegations in this Paragraph not specifically admitted herein.

38.     On the following day, RESLLC instituted a cancellation proceeding (the "Cancellation Proceeding") before the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office. A copy of the Petition for Cancellation filed in the Cancellation Proceeding is attached as Exhibit 8.

**Defendants' Response**: Admit.

39.     Thiago Ataide and Debora Ataide personally, tortiously, willfully and knowingly directed the false, fraudulent and infringing activity complained of herein, and as a result, should be held personally liable.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

### The Ataides' Reveal Their Fraud

40.     On March 17, 2025, the Ataides filed an Answer in this action. In their Answer, the Ataides denied that Serpa and RESLLC ever went into business together, and the Ataides claim to be "without knowledge or information" regarding Serpa's ownership of and investment in RESLLC. Likewise, the Ataides claim to be "without knowledge or information" regarding monies that Serpa paid to RESLLC. In addition, Debora Ataide denies that Serpa was "inadvertently" removed from RESLLC's Annual Reports.

**Defendants' Response:** Admit.

41.     Indeed, the Ataides have now taken the position that Serpa does not "own," has never owned, and is not "entitled to, any ownership interest in" RESLLC. Additionally, "Debora

Ataide admits she has not distributed any monies from [RESLLC] to [Serpa]…" in violation of Florida law.

**Defendants' Response:** Defendants admit Plaintiff does not own, has never owned, and is not entitled to any ownership interest in WRA RESLLC. Defendant Debora Ataide admits she has not distributed any monies from WRA RESLLC to Plaintiff because Plaintiff does not have any ownership interest in WRA RESLLC, but Defendant Debora Ataide denies such action is in violation of Florida Law. Otherwise denied.

42.     Having affirmatively asserted that Serpa does not have "any ownership interest in" RESLLC, the Ataides have now cast their own wrongful conduct in an entirely new light.

**Defendants' Response:** Defendants admit Plaintiff does not have any ownership interest in WRA RESLLC. This Paragraph otherwise consists of legal conclusions to which no response is required and therefore deny them.

43.     On January 31, 2017, Thiago Ataide forwarded Serpa's principal an e-mail exchange that Thiago Ataide had with Mariana Souza, who, at the time, worked for Account Bookkeping Corp. ("ABK Corp."). Debora Ataide was copied on the e-amil to Serpa's principal. In Thiago Ataide's e-mail exchange with Ms. Souza, Ms. Souza asked "[w]ho will be transferring this 1% to Elio Serpa? What will be the effective date of this change? Will it be a retroactive change or current one? Can I charge the amount of the changes to the [RESLLC] card that we have on file. I'll be waiting." In response, Thiago Ataide wrote "I will be giving this 1% to Elio." After Ms. Souza indicated that RESLLC's credit card had been declined, Thiago Ataide forwarded the message string to Serpa's principal with the message that "[Ms. Souza] needs your information to change the operating agreement. Can you give her your card number, please? Thank you."

**Defendants' Response:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

44.     Ultimately, ABK Corp. submitted invoice no. 15337, dated February 10, 2017, to Serpa for the preparation of "Amendment Op. Agreement, Meeting Minutes and Membership Certificates" that Thiago Ataide requested.

**Defendants' Response:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

45.     After Serpa paid Ms. Souza, ABK Corp. put together two documents. On February 13, 2017, Ms. Souza e-mailed two documents to Thiago Ataide, Debora Ataide and Serpa's principal along with the message:

> Hello Thiago and Elio,
>
> Please find attached the Amendment to the Op. Agreement and Meeting Minute so that you can sign confirming the changes to [RESLLC].
>
> I also need to make changes to the Share Certificates? Do you have the Corporate Book?

**Defendants' Response:** Defendants admit that Ms. Souza sent unexecuted, draft copies of an Amended Operating Agreement and Meeting Minutes to Thiago Ataide, Debora Ataide, and Plaintiff's principal, Elio Serpa. Otherwise denied.

46.     The first, entitled "Second Amendment to Operating Agreement of [RESLLC]," purported to amend RESLLC's Operating Agreement. That Amendment provides in relevant part:

> 2.1.     The Member [Serpa] is entering in the Company.
> 2.2.     The former Member, [Thiago Ataide] is transferring 1% of his shares to the new Member [Serpa].
> 2.3.     The former Member [Thiago Ataide] is transferring 9% of his shares to the Member [G2B].
> The Amendment also contains a "Ratification" provision that provides "[RESLLC]'s Operating Agreement, as amended, is hereby ratified, confirmed and approved by the Member(s)."

**Defendants' Response:** Defendants admit that the unexecuted draft of the Amended Operating Agreement attached to Ms. Souza's Feb. 13, 2017 email contains the text provided above in this Paragraph. Otherwise denied.

47.    The second document was entitled "[RESLLC] Meeting Minutes." The Minutes, dated February 2, 2017, reflected that RESLLC conducted a corporate meeting on February 2, 2017 at 3:50pm at 5301 Conroy Rd Ste 140 – Orlando, FL 32811." The Minutes also confirmed the following "Announcements":

> 1.  The Member [Serpa] is entering in the Company.
> 2.  The former Member [Thiago Ataide] is transferring 1% of his shares to the new member [Serpa].
> 3.  The former member [Thiago Ataide] is transferring 9% of his shares to the Member [G2B].

**Defendants' Response:** Defendants admit that the unexecuted draft of the Meeting Minutes attached to Ms. Souza's Feb. 13, 2017 email contains the text provided above in this Paragraph. Otherwise denied.

48.    The Amendment and Minutes contained spaces for Serpa, Thiago Ataide and G2B to sign.  Serpa signed both documents in the space provided and gave them to Thiago Ataide, who also signed them. Upon information and belief, Thiago Ataide provided copies to Ms. Souza.

**Defendants' Response:** Defendants admit the Amendment and Minutes contained signature lines but upon information and belief, deny Defendant Thiago Ataide signed either document or provided executed copies to Ms. Souza. Otherwise denied.

49.    ABK Corp. has confirmed that the Amendment and Minutes were executed, and that it received a copy of same from the Ataides in 2017. ABK Corp. knows this because it submitted the amendment to the RESLLC Annual Report to the Florida Division of

Corporations in 2017, and it would not have made the change with the Florida Division of Corporations had it not received a fully-executed copy of the documents.  Although ABK Corp. claims that it no longer has a copy, ABK Corp. indicated that RESLLC should have, and previously had, a fully-executed copy of the documents.

**Defendants' Response:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

50.    Initially, Serpa was expected to contribute sweat equity to RESLLC. Specifically, Serpa was expected to leverage its principal's expertise and business brokerage services for the benefit of RESLLC.  However, Serpa ended up paying for marketing and advertising to promote RESLLC.  Eventually, RESLLC's expectations of Serpa expanded again; Serpa was now expected to recruit agents who would work for RESLLC, to lead RESLLC's expansion into new markets.

**Defendants' Response:** Defendants admit that, pursuant to the executed Miami Branch Agreement, Plaintiff was responsible for "marketing" expenses, the "recruiting of new agents," and "lead generation," among other things. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

51.    Not long after execution of the Amendment, on or about April 10, 2017, Thiago Ataide introduced Serpa's principal as his partner. When contacted by a referral source in Sao Paulo, Brazil, Thiago Ataide responded, copying Serpa's principal, and said (original in Portuguese): "I am copying Elio Serpa, who is my partner and takes care of the entire business acquisition and sale department."

**Defendants' Response:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

52.     In another message sent later in 2017, Thiago Ataide wrote (original in Portuguese): "I am copying Carol, our assistant, and Elio Serpa, Partner and Business Broker, who will be in touch with you."

**Defendants' Response:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

53.     It is now apparent that the Ataides caused the Amendment and Minutes to be prepared to give Serpa the false impression that he was acquiring an ownership interest in RESLLC. Upon information and belief, the Ataides knew at the time that they caused the Amendment and Minutes to be prepared, and at the time that they presented the documents to Serpa to sign, that they had no intention of selling any ownership interest in RESLLC to Serpa or recognizing that Serpa owned any interest in RESLLC. Upon information and belief, the Ataides believed that if they created the illusion of selling an ownership interest in RESLLC to Serpa, Serpa would pay money for the benefit of RESLLC, and would do the work of expanding RESLLC's business.

**Defendants' Response:** This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

54.     All conditions precedent to this action have occurred, been performed, waived or excused.

**Defendants' Response:** This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

55.     Serpa has retained the undersigned law firm to represent it in this action and has agreed to pay the law firm reasonable attorney's fees for their services.

**Defendants' Response:** Defendants are without knowledge or information sufficient to form

a belief as to the truth of the averments contained in this Paragraph and therefore deny them.

## COUNT I: TRADEMARK INFRINGEMENT, 15 U.S.C. §1114

(Against All Defendants)

56.      Serpa repeats paragraphs 1 through 55 in support of this Count.

**Defendants' Response**: Defendants repeat and reallege their respective responses to the allegations in paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

57.      Serpa's WRA Mark is protectable and distinctive and serves as a source indicator for Serpa's high quality services.

**Defendants' Response**: Denied.

58.      Serpa owns the federal registration for the WRA Mark. *See* Exhibit 1.

**Defendants' Response**: Denied.

59.      Defendants are not licensees or otherwise authorized to use the WRA Mark, and have no right to hold themselves out as the source of Serpa's services through the use of a confusingly similar infringing mark.

**Defendants' Response**: Denied.

60.      Without Serpa's authorization, Defendants have knowingly and willfully used Serpa's WRA Mark and/or a confusingly similar Infringing Mark in commerce, and such use is likely to cause confusion among the relevant consuming public as to the source, sponsorship and/or authorization of the services offered by the Defendants.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

61.    Thiago Ataide and Debora Ataide have individually directed the infringing activities, or been in a position to supervise and control the infringing activities, and therefore, should be held individually responsible for such activities.

**Defendants' Response:** Denied.

62.    Defendants are engaging in the aforementioned conduct willfully and with full knowledge and awareness of Serpa's prior and continuing trademark rights, and with the purpose and intent of trading off the goodwill associated with Serpa's WRA Mark, and confusing the relevant consuming public into mistakenly believing that Defendants are the source of Serpa's services, or that Defendants' services are otherwise sponsored by, authorized by, or associated with Serpa.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

63.    Serpa has suffered damages and irreparable harm as a result of Defendants' actions, and will continue to suffer irreparable injury unless Defendants are enjoined from infringing Serpa's WRA Mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

64.    Serpa is entitled to all of the remedies available under the Lanham Act, 15 U.S.C. §1051 et seq., including but not limited to: injunctive relief, compensatory damages in an amount to be proven at trial; an accounting of Defendants' profits and disgorgement of same; reasonable attorneys' fees; and exemplary, treble damages against all Defendants, jointly and severally, including but not limited to Thiago Ataide and Debora Ataide individually, due to the exceptional nature of this case.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

## COUNT II: TRADEMARK INFRINGEMENT, 15 U.S.C. §1125(a)

(Against All Defendants)

65.     Serpa repeats paragraphs 1 through 55 in support of this Count.

**Defendants' Response**: Defendants repeat and reallege their respective responses to the allegations in paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

66.     Defendants' use of Serpa's WRA Mark and/or a confusingly similar Infringing Mark in connection with Defendants' services, is likely to cause confusion or mistake, or to deceive, as to: (1) the affiliation, connection, or association of Defendants with Serpa; (2) the origin, sponsorship, or approval of the services that Serpa provides under Serpa's WRA Mark; and/or (3) the origin, sponsorship or approval of services or products Defendants provide under Serpa's WRA Mark and/or a confusingly similar infringing mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

67.     By using the confusingly similar infringing marks to redirect or divert consumers to Defendants' services sold or provided in connection with the infringing marks, consumers are likely to believe that Serpa's services originate with Defendants and/or that Defendants or Defendants' services are affiliated with Serpa, thus causing confusion in the marketplace.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

68.     By using confusingly similar infringing marks in commerce, Defendants are falsely conveying to consumers that Defendants are the source of Serpa's services, or that

Defendants have granted Serpa the authority to represent itself using Serpa's WRA Mark, or that Serpa has granted Defendants the authority to represent Serpa, or that Defendants are otherwise associated with Serpa.

**Defendants' Response**: Denied.

69.     Defendants' actions constitute unfair competition, false association, and false designation of origin in violation of 15 U.S.C. §1125, and have caused Serpa injury, including without limitation irreparable injury to the goodwill associated with Serpa's WRA Mark, which will continue unless enjoined.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

70.     Serpa is entitled to all of the remedies available under the Lanham Act, 15 U.S.C. §1051 et seq., including but not limited to: injunctive relief, compensatory damages in an amount to be proven at trial; an accounting of Defendants' profits and disgorgement of same; reasonable attorneys' fees; and exemplary, treble damages against all Defendants, jointly and severally, including but not limited to Thiago Ataide and Debora Ataide individually, due to the exceptional nature of this case.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

## COUNT III: DECLARATORY RELIEF

### (Against RESLLC)

71.     Serpa repeats paragraphs 1 through 55 in support of this Count.

**Defendants' Response**: Defendant WRA RESLLC repeats and realleges its responses to the allegations in paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

72.     This claim arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**Defendants' Response**: Defendant WRA RESLLC admits only that Plaintiff asserted claims pursuant to the Lanham Act, 15 U.S.C. §1051 et seq., and the Declaratory Judgment Act, 28 U.S.C §§ 2201 and 2202. Defendant WRA RESLLC otherwise denies all allegations in this Paragraph not specifically admitted herein.

73.     There is a real, immediate, substantial, and justiciable controversy between Serpa and RESLLC as to who has the right to use the WRA Mark and to own the federal trademark registration for the WRA Mark.

**Defendants' Response**: Defendant WRA RESLLC admits that the Challenged Mark infringes Defendant WRA RESLLC's long-standing and senior trademark rights, including, without limitation, in the mark "WRA," and that Plaintiff and Defendant WRA RESLLC dispute this. Otherwise denied by Defendant WRA RESLLC.

74.     According to the federal registration for the WRA Mark, Serpa is the owner of the registration and of the WRA Mark.

**Defendants' Response**: Defendant WRA RESLLC admits only that Plaintiff fraudulently applied to register the Challenged Mark in its own name without any Defendant's knowledge or authorization. Defendant WRA RESLLC further and otherwise denies all allegations in this Paragraph not specifically admitted herein.

75.     Nonetheless, RESLLC seeks to cancel the federal registration for the WRA Mark, and has filed the Cancellation Proceeding seeking same.

**Defendants' Response**: Admit.

76.     Serpa is entitled to a judicial determination that it is the owner of the registration for the WRA Mark, that Serpa owns the exclusive rights associated with that federal registration, and that RESLLC has no basis for seeking to cancel the federal registration for the WRA Mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied by Defendant WRA RESLLC.

## COUNT IV: DECLARATORY RELIEF

### (Against RESLLC)

77.     Serpa repeats paragraphs 1 through 55 in support of this Count.

**Defendants' Response**: Defendant WRA RESLLC repeats and realleges its responses to the allegations in paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

78.     This claim arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**Defendants' Response**: Defendant WRA RESLLC admits only that Plaintiff asserted claims pursuant to the Lanham Act, 15 U.S.C. §1051 et seq., and the Declaratory Judgment Act, 28 U.S.C §§ 2201 and 2202. Defendant WRA RESLLC otherwise denies all allegations in this Paragraph not specifically admitted herein.

79.     There is a real, immediate, substantial, and justiciable controversy between Serpa and RESLLC as to whether RESLLC has the right to obtain a federal trademark registration for the Infringing Mark.

**Defendants' Response**: Defendant WRA RESLLC admits that the Challenged Mark infringes Defendant WRA RESLLC's long-standing and senior trademark rights, including, without limitation, in the mark "WRA," and that Plaintiff and Defendant WRA RESLLC dispute this. Otherwise denied by Defendant WRA RESLLC.

80.     The Infringing Mark is confusingly similar to the WRA Mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required.

81.     Nonetheless, RESLLC has filed a federal trademark application for the Infringing Mark.

**Defendants' Response**: Defendant WRA RESLLC admits only that it has filed an application with the U.S. Patent & Trademark Office (the "Office") seeking to register its long-standing WRA Mark. *See* Exhibit 5 attached to this Answer, Defendant WRA RESLLC's pending U.S. Trademark Application Serial No. 98/910,240. Defendant WRA RESLLC otherwise denies all allegations in this Paragraph not specifically admitted herein.

82.     Serpa is entitled to a judicial determination that the Infringing Mark is confusingly similar to the WRA Mark.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

## COUNTS V AND VI

**Defendants' Response:** Defendants have concurrently moved to dismiss Counts V, and VI of Plaintiff's Amended Complaint, which encompass paragraphs 83-97.

## COUNT VII: APPOINTMENT OF CUSTODIAN/RECEIVER

98.     Serpa repeats paragraphs 1 through 55 in support of this Count.

**Defendants' Response**: Defendants are not on notice to whom this claim is directed and deny it alleges an independent cause of action. Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 55 of the Complaint as if fully set forth herein.

99.     This Count is asserted derivatively on behalf of RESLLC.

**Defendants' Response**: Denied.

100.    Serpa is a member of RESLLC.

**Defendants' Response**: Denied.

101.    Upon information and belief, the remaining interests are held by the Ataides and G2B, a company that, upon information and belief, the Ataides own. Debora Ataide is RESLLC's managing member.

**Defendants' Response**: Defendants admit only that, as of the date of this Answer: (i) Defendant WRA RESLLC is owned by Defendants Thiago Ataide, Debora Ataide, and G2B; and (ii) Defendant Debora Ataide is Defendant WRA RESLLC's managing member. Defendants otherwise deny all allegations in this Paragraph not specifically admitted herein.

102.    The assets of RESLLC are being misappropriated, stolen and wasted, causing injury to RESLLC.

**Defendants' Response**: This Paragraph consists of legal conclusions to which no response is required. Otherwise denied.

103.    Debora Ataide has taken numerous and multiple management decisions and actions which are severely detrimental to RESLLC.

**Defendants' Response**: Denied.

104.    RESLLC is threatened with substantial irreparable harm as a result of the actions being taken by its managing member.

**Defendants' Response**: Denied.

105.    Therefore, the Court should appoint an ancillary receiver or custodian over RESLLC, pursuant to Florida Statutes Section 605.0704, to exercise all of the powers of

RESLLC, through or in place of its managing member, to the extent necessary to manage the activities and affairs of RESLLC in the best interest of its members, customers and creditors.

**Defendants' Response**: Denied.

## COUNTS VIII AND IX

**Defendants' Response:** Defendants have concurrently moved to dismiss Counts VIII and IX of Plaintiff's Amended Complaint, which encompass paragraphs 106 -118.

## PRAYER FOR RELIEF

**Defendants' Response:** Defendants deny that Plaintiff is entitled to any relief, including, but not limited to, the relief sought by Plaintiff. *See* Amended Complaint [ECF No. 34] at Prayer for Relief, ¶ A-M.

## DEFENDANTS' DEFENSES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants reassert the following defenses, affirmative defenses, and counterclaims. In doing so, Defendants do not assume any burden of proof on any issue that is properly Plaintiff's burden of proof as a matter of law. Defendants also reserve the right to amend or supplement these defenses as additional facts become known through discovery or other analysis.

### FIRST DEFENSE

#### Invalidity

Defendant WRA RESLLC has long-standing and senior trademark rights in a family of marks comprising "WRA." Plaintiff has never held any right or permission to apply to register the Challenged Mark. Yet, without any Defendant's knowledge or permission, Plaintiff registered the Challenged Mark with the Office. Plaintiff's trademark registration for the Challenged Mark is invalid, unenforceable, and subject to cancellation pursuant to 15 U.S.C. §

1119 because the registration was filed by Plaintiff without authorization from the owner and was obtained through deceptive means.

## SECOND DEFENSE

### Non-Infringement

Defendant WRA RESLLC's WRA Marks have priority over Plaintiff's Challenged Mark. Defendant WRA RESLLC's first-use date for the WRA Marks predates the first-use, filing, and registration dates of Plaintiff's trademark application for the Challenged Mark or any other date on which the Plaintiff may rely for purposes of priority. As a result of Defendant WRA RESLLC's widespread, continuous, and exclusive use of the WRA Marks to identify its services and Defendant WRA RESLLC as their source, Defendant WRA RESLLC owns valid and subsisting common law rights

to the WRA Marks, including, without limitation, the Challenged Mark. Therefore, Defendants have not infringed and currently do not infringe a valid and enforceable trademark owned by Plaintiff.

## THIRD DEFENSE

### No Requested Relief

Plaintiff's claim for injunctive relief is barred, in whole or in part, on the grounds that Plaintiff has not suffered any irreparable injury nor is Plaintiff likely to succeed on any of the claims asserted in this action. Specifically, Plaintiff is not entitled to any of the relief it seeks because Plaintiff has never been the owner of any of the WRA Marks nor held any right to apply to register the Challenged Mark. Therefore, Plaintiff is not entitled to injunctive relief and damages against the Defendants for trademark infringement, and declaratory relief regarding the Challenged Mark. Further, upon information and belief, neither Elio Serpa nor Plaintiff own, or are otherwise entitled to, any ownership interest in Defendant WRA RESLLC. Thus, Plaintiff has not been

damaged as alleged in its Amended Complaint under Counts V, VI, VII, VIII, or IX.

**FOURTH DEFENSE**

**Laches**

In 2016, Defendants first introduced Elio Serpa to Defendant WRA RESLLC's WRA Marks. Defendant WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services. In fact, to commemorate Defendant WRA RESLLC's established real estate services under the WRA Marks, Defendant WRA RESLLC has recently released a special 10-year anniversary logo. As Defendant WRA RESLLC's real estate associate, Elio Serpa was aware of Defendant WRA RESLLC's exclusive, widespread, and continuous use of the WRA Marks. Plaintiff, however, applied for the Challenged Mark in March 2021 alleging a date of first use in commerce of December 20, 2016, yet during that time made no infringement claim. It was not until January 2025 that Plaintiff brought this action alleging, in part, that Defendants were infringing upon the Challenged Mark. Plaintiff's delay is inexcusable because Plaintiff, through Elio Serpa, knew of Defendant WRA RESLLC's use of its family of WRA Marks. Defendants are unduly prejudiced by Plaintiff's delay because Defendant WRA RESLLC has expended considerable time, money, and resources marketing, advertising, and promoting the services sold under the WRA Marks. Therefore, Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**FIFTH DEFENSE**

**Waiver**

In 2016, Defendants first introduced Elio Serpa to Defendant WRA RESLLC's WRA Marks. Defendant WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services.  In fact, to commemorate Defendant WRA RESLLC's established real estate services under the WRA Marks, Defendant WRA RESLLC has recently released a special 10-

year anniversary logo. As Defendant WRA RESLLC's real estate associate, Elio Serpa was aware of Defendant WRA RESLLC's exclusive, widespread, and continuous use of the WRA Marks. Plaintiff, however, applied for the Challenged Mark in March 2021 alleging a date of first use in commerce of December 20, 2016, yet during that time made no infringement claim. It was not until January 2025 that Plaintiff brought this action alleging, in part, that Defendants were infringing upon the Challenged Mark. Plaintiff's delay is inexcusable because Plaintiff, through Elio Serpa, knew of Defendant WRA RESLLC's use of its family of WRA Marks. Defendants are unduly prejudiced by Plaintiff's delay because Defendant WRA RESLLC has expended considerable time, money, and resources marketing, advertising, and promoting the services sold under the WRA Marks. Therefore, Plaintiff's claims are barred, in whole or in part, by the doctrine

of waiver.

## SIXTH DEFENSE

## Equitable Estoppel

In 2016, Defendants first introduced Elio Serpa to Defendant WRA RESLLC's WRA Marks. Defendant WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services.  In fact, to commemorate Defendant WRA RESLLC's established real estate services under the WRA Marks, Defendant WRA RESLLC has recently released a special 10-year anniversary logo. As Defendant WRA RESLLC's real estate associate, Elio Serpa was aware of Defendant WRA RESLLC's exclusive, widespread, and continuous use of the WRA Marks. Plaintiff, however, applied for the Challenged Mark in March 2021 alleging a date of first use in commerce of December 20, 2016, yet during that time made no infringement claim. It was not until January 2025 that Plaintiff brought this action alleging, in part, that Defendants were infringing upon the Challenged Mark. Plaintiff's delay is inexcusable because Plaintiff, through Elio Serpa, knew of Defendant WRA RESLLC's use of its family of WRA Marks. Defendants

are unduly prejudiced by Plaintiff's delay because Defendant WRA RESLLC has expended considerable time, money, and resources marketing, advertising, and promoting the services sold under the WRA Marks. Plaintiff did not object or take any action regarding Defendant WRA RESLLC's continuous and widespread use of the Challenged Mark until January 2025. Thus, Defendants did not know that Plaintiff objected to Defendant WRA RESLLC's use of the Challenged Mark and relied on Plaintiff's inaction when it invested considerable time, money, and resources in the WRA Marks, including, without limitation, the Challenged Mark. Defendants would be materially prejudiced if Plaintiff is permitted to pursue its claims. Therefore, Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

## SEVENTH DEFENSE

### Unclean Hands

Defendant WRA RESLLC has used the WRA Marks since at least as early as 2013 in connection with the management, sale, marketing, and advertising of real estate services. The Challenged Mark is a derivative of the WRA Marks. Defendant WRA RESLLC first used the WRA Marks prior to any date Plaintiff can claim. Yet, Elio Serpa, through Plaintiff, registered the Challenged Mark with the Office without the knowledge or consent of Defendant WRA RESLLC. Further, also without WRA RESLLC's knowledge or consent, Plaintiff created a limited liability company using the name "WRA MIAMI BUSINESS & REAL ESTATE LLC", as shown in Exhibit 4 to this Answer, rather than establishing a branch office in Miami as an extension of Defendant WRA RESLLC, as agreed upon pursuant to the Miami Branch Agreement and evidenced by Exhibit 3 to this Answer. In light of Plaintiff's improper registration of the Challenged Mark and creation of WRA MIAMI BUSINESS & REAL ESTATE LLC, potential purchasers of Plaintiff's services are likely to be confused and believe that Defendant WRA

RESLLC is the source of such services, or that Defendant WRA RESLLC has authorized, sponsored, approved of, or in some other manner associated itself with the services of Plaintiff, thereby creating a likelihood of confusion, deception, or mistake to the public at large. Therefore, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTH DEFENSE

### <u>Acquiescence</u>

In 2016, Defendants first introduced Elio Serpa to Defendant WRA RESLLC's WRA Marks. Defendant WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services.  In fact, to commemorate Defendant WRA RESLLC's established real estate services under the WRA Marks, Defendant WRA RESLLC has recently released a special 10-year anniversary logo. As Defendant WRA RESLLC's real estate associate, Elio Serpa was aware of Defendant WRA RESLLC's exclusive, widespread, and continuous use of the WRA Marks. Plaintiff, however, applied for the Challenged Mark in March 2021 alleging a date of first use in commerce of December 20, 2016, yet during that time made no infringement claim. It was not until January 2025 that Plaintiff brought this action alleging, in part, that Defendants were infringing upon the Challenged Mark. Plaintiff's delay is inexcusable because Plaintiff, through Elio Serpa, knew of Defendant WRA RESLLC's use of its family of WRA Marks. Defendants are unduly prejudiced by Plaintiff's delay because Defendant WRA RESLLC has expended considerable time, money, and resources marketing, advertising, and promoting the services sold under the WRA Marks. Therefore, Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence, based on Plaintiff's conduct regarding Defendant WRA RESLLC's use of the Challenged Mark, which conduct was prejudicial to Defendants.

**NINTH DEFENSE**

**Statute of Limitations**

Each of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

For example, in 2016, Defendants first introduced Elio Serpa to Defendant WRA RESLLC's WRA Marks. Defendant WRA RESLLC  has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services. In fact, to commemorate Defendant WRA RESLLC's established real estate services under the WRA Marks, Defendant WRA RESLLC has recently released a special 10-year anniversary logo. As Defendant WRA RESLLC's real estate associate, Elio Serpa was aware of Defendant WRA RESLLC's exclusive, widespread, and continuous use of the WRA Marks. Plaintiff, however, applied for the Challenged Mark in March 2021 alleging a date of first use in commerce of December 20, 2016, yet during that time made no infringement claim. It was not until January 2025 that Plaintiff brought this action alleging, in part, that Defendants were infringing upon the Challenged Mark. Plaintiff therefore had actual knowledge of its claim yet failed to raise it for many years.

**PARTIES**

1.      WRA RESLLC is a limited liability company organized and existing under the laws of the State of Florida with a principal place of business at 7065 Westpointe Blvd, Suite 102, Orlando, FL 32835. WRA RESLLC is a real estate brokerage firm that specializes in real estate management and providing advice to buyers who wish to purchase residential or commercial properties.

2.      Upon information and belief, Elio Serpa PLLC is a limited liability company with a principal place of business locate at 1395 Brickell Avenue, Suite 852, Miami, Florida 33131.

3.      Upon information and belief, Elio Serpa PLLC offers real estate related services on its website elioserpa.com.

## JURISDICTION AND VENUE

4.      This case is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1501, *et seq.*; and the laws of the State of Florida.

5.      This Court has subject matter jurisdiction over the claims herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and pursuant to principles of supplemental jurisdiction under 28 U.S.C. 1367.

6.      Venue is proper in this District per 28 U.S.C. § 1391(b)(1) because Elio Serpa PLLC's principal place of business is in Miami, Florida and therefore is a resident of this District.

## BACKGROUND

### WRA RESLLC AND THE WRA MARKS

7.      WRA RESLLC has used its distinctive service mark "WRA" and several associated logos, including, but not limited to the following logo, in commerce for many years (collectively, the "WRA Marks"):



8.      WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real

estate services since at least as early as 2013. Attached hereto as Exhibit 6 is an example of WRA RESLLC's use of the WRA Marks in connection with these services.

9.      Over the years, WRA RESLLC adopted several logos incorporating the WRA Marks and used such logos in the business. In fact, to commemorate WRA RESLLC's established real estate services under the WRA Marks, WRA RESLLC has recently released a special 10-year anniversary logo.





10.     Relatedly, on December 18, 2024, WRA RESLLC filed an application with the Office seeking to register its long-standing mark consisting of two curved lines with buildings and houses on the top line, inside a circle with the wording "WRA" on the right side of the design for use in connection with the management, sale, marketing, and advertising of real estate services in Class 36. *See* Exhibit 5 attached to this Answer, WRA RESLLC's pending U.S. Trademark Application Serial No. 98/910,240.

11.     WRA RESLLC specializes in providing real estate advice to buyers, particularly international buyers and their representatives, who wish to purchase a residential or commercial property in Florida. WRA RESLLC also offers property management services for clients, including listing on the market for rental and maintenance services. WRA RESLLC also provides

commercial real estate services, property development and construction advice, and services in connection with the purchase of businesses and franchises.

12.     As a result of its widespread, continuous, and exclusive use of the WRA Marks to identify its services and WRA RESLLC as their source, WRA RESLLC owns valid and subsisting common law rights to the WRA Marks.

13.     WRA RESLLC's WRA Marks are distinctive to both the consuming public and WRA RESLLC's trade.

14.     WRA RESLLC has expended considerable time, money, and resources marketing, advertising, and promoting the services sold under the WRA Marks including, but not limited to, through social media and its primary website at wra-usa.com (the "WRA RESLLC Website"). Attached as Exhibit 7 are screenshots of WRA RESLLC's Website describing its services and showing its WRA Marks, and social media account postings showing WRA RESLLC's longstanding use of the WRA Marks in connection with its services.

15.     The services WRA RESLLC offers under the WRA Marks are of high quality.

16.     WRA RESLLC has advertised and promoted its real estate and other services under the WRA Marks for many years, and in addition to WRA RESLLC's Website, maintains other websites, through which WRA RESLLC has further advertised and promoted real estate services under the WRA Marks for many years. Such other websites include but are not limited to: <wramanagement.com>; <wrarealestate.com>; <casasparacompraremorlando.com>; and <imoveisnosestadosunidos.com>.

17.     The WRA Marks are well-known to individuals seeking real estate services and are associated with a valuable goodwill belonging exclusively to WRA RESLLC.

### ELIO SERPA AND ELIO SERPA, PLLC

18.     U.S. Trademark Registration No. 6,651,766 for the mark WRA BUSINESS & REAL ESTATE (and design) (the "Challenged Mark") is a derivative of the WRA Marks. WRA RESLLC first used the WRA Marks prior to any date Elio Serpa, PLLC can claim.

19.     In 2016, WRA RESLLC hired Elio Serpa, sole owner and principal of Elio Serpa, PLLC, as an independent contractor.

20.     Between 2017 and 2023, Elio Serpa was engaged by WRA RESLLC, in part, to help WRA RESLLC establish a Miami branch office. As part of the arrangement, Elio Serpa was permitted a limited license to use, under WRA RESLLC's supervision and direction, the following logo:



21.     At no time was Elio Serpa or Elio Serpa, PLLC granted any ownership rights in, or any exclusive right to use, any of the WRA Marks, including, the Challenged Mark.

22.     WRA RESLLC's working relationship with Elio Serpa discontinued in January 2023. Since that time, neither Elio Serpa nor Elio Serpa, PLLC have any right whatsoever to use the WRA Marks.

23.     Unbeknownst to WRA RESLLC, upon information and belief, Elio Serpa, through Elio Serpa, PLLC, registered the Challenged Mark with the Office. Elio Serpa, PLLC has never been the owner of any of the WRA Marks nor held any right to apply to register the Challenged Mark with the Office.

24.     Upon information and belief, Elio Serpa PLLC is the current record owner of U.S. Trademark Registration No. 6,651,766 for the Challenged Mark in connection with "real estate consultancy" services in International Class 36. *See* Exhibit 8, File History, TSDR and TESS Status Records of Challenged Mark.

25.     The registration of the Challenged Mark is based on an application filed under Section 1(a) by Elio Serpa, PLLC on March 23, 2021. *Id.* at p. 43 (Application Serial No. 90/598,107). In the application, Elio Serpa, PLLC alleged a date of first use in interstate commerce of December 20, 2016. *Id.*

26.     The certificate of registration of the Challenged Mark was issued by the Office to Elio Serpa, PLLC on February 22, 2022. *Id.* at 52 (Registration Certificate).

27.     WRA RESLLC's WRA Marks have priority over Elio Serpa PLLC's Challenged Mark, which is a derivative of the WRA Marks, because WRA RESLLC's first-use date for the WRA Marks predates the first-use, filing, and registration dates of Elio Serpa PLLC's trademark

application for the Challenged Mark or any other date on which Elio Serpa PLLC may rely for purposes of priority.

28.     WRA RESLLC first introduced Elio Serpa to WRA RESLLC's WRA Marks in 2016. Elio Serpa PLLC's Challenged Mark incorporates WRA RESLLC's WRA Marks in their entirety.

29.     The services covered by Elio Serpa PLLC's Trademark Registration No. 6,651,766 are identical or at least substantially similar to the services WRA RESLLC has offered for the last decade under the WRA Marks.

30.     Upon information and belief, when the application that matured into the registration of the Challenged Mark was filed, neither Elio Serpa nor Elio Serpa PLLC possessed the state licensure required to provide any real estate brokerage services.

## COUNT I:
## FEDERAL UNFAIR COMPETITION
### (15 U.S.C. 1125(a))

31.     WRA RESLLC repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

32.     Elio Serpa PLLC's unauthorized use in commerce of the Challenged Mark, which is a derivative of the WRA Marks, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Elio Serpa PLLC's goods or services, and is likely to cause potential purchasers of WRA RESLLC's goods or services to believe, contrary to fact, that Elio Serpa PLLC is authorized, endorsed, or sponsored by WRA RESLLC, or that Elio Serpa PLLC is in some way affiliated with or sponsored by WRA RESLLC.

33.     Elio Serpa PLLC does not now, and has never, enjoyed any ownership rights in and to the WRA Marks or the Challenged Mark.

34.     Any right or authorization Elio Serpa may have once enjoyed to use the WRA Marks or the Challenged Mark did not extend to this entity and regardless was terminated in its entirety in 2023 when the working relationship between WRA RESLLC and Elio Serpa discontinued.

35.     Elio Serpa PLLC's unauthorized use in commerce of the Challenged Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

36.     Upon information and belief, Elio Serpa PLLC's conduct, as alleged herein, is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of Elio Serpa PLLC with WRA RESLLC.

37.     Elio Serpa PLLC's conduct, as alleged herein, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and is causing immediate and irreparable harm and injury to WRA RESLLC, and to its goodwill and reputation, and will continue to both damage WRA RESLLC and confuse the public unless enjoined by this court. WRA RESLLC has no adequate remedy at law.

38.     WRA RESLLC is entitled to, among other relief, injunctive relief and an award of actual damages, Elio Serpa PLLC's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT II:**
**CANCELLATION OF PLAINTIFF'S REGISTRATION**
**(15 U.S.C. § 1119)**

39.     WRA RESLLC repeats and realleges paragraphs 1 through 30 hereof, as if fully set forth herein.

40.     Since 2013, WRA RESLLC has used the WRA Marks in interstate commerce in the United States continuously in connection with the management, sale, marketing, and advertising of real estate services. In fact, to commemorate WRA RESLLC's established real estate services under the WRA Marks, WRA RESLLC has recently released a special 10-year anniversary logo.

41.     Upon information and belief, Elio Serpa, PLLC knew of WRA RESLLC's use of its family of WRA Marks since at least as early as 2016.

42.     WRA RESLLC has been and is likely to be injured and damaged by the continued registration of the Challenged Mark because it is, upon information and belief, used by or registered by Elio Serpa PLLC, so as to misrepresent the source of the goods or services on or in connection with the WRA Marks, including, but not limited to, the Challenged Mark.

43.     By reason of the foregoing, the Challenged Mark should be cancelled pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

**COUNT III:**
**COMMON LAW TRADEMARK INFRINGEMENT**

44.     WRA RESLLC repeats and realleges paragraphs 1 through 30 hereof, as if fully set forth herein.

45.     WRA RESLLC owns the WRA Marks.

46.     Elio Serpa PLLC's unauthorized use in commerce of the Challenged Mark, which is a derivative of the WRA Marks, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Elio Serpa PLLC's goods or services, and is likely to cause potential purchasers of WRA RESLLC's goods or services to believe, contrary to fact, that Elio Serpa PLLC is authorized, endorsed, or sponsored by WRA RESLLC, or that Elio Serpa PLLC is in some way affiliated with or sponsored by WRA RESLLC.

47.     Elio Serpa PLLC does not now, and has never, enjoyed any ownership rights in and to the WRA Marks or the Challenged Mark.

48.     Any right or authorization Elio Serpa may have once enjoyed to use the WRA Marks or the Challenged Mark did not extend to this entity and regardless was terminated in its entirety in 2023 when the working relationship between WRA RESLLC and Elio Serpa discontinued.

49.     Elio Serpa PLLC's unauthorized use in commerce of the Challenged Mark is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Elio Serpa PLLC with WRA RESLLC and its respective services

50.     Elio Serpa PLLC's conduct as alleged herein constitutes infringement of WRA RESLLC's common law trademark rights and is causing immediate and irreparable harm and injury to WRA RESLLC, and to its goodwill and reputation, and will continue to both damage WRA RESLLC and confuse the public unless enjoined by this court. WRA RESLLC has no adequate remedy at law.

51.     WRA RESLLC is entitled to, among other relief, injunctive relief and an award of actual damages, Elio Serpa PLLC's profits, enhanced damages and profits, together with prejudgment and post-judgment interest.

## DEMAND FOR JURY TRIAL

WRA RESLLC hereby demands a jury trial on all causes of action alleged herein.

## PRAYER FOR RELIEF

WRA RESLLC requests judgment against Elio Serpa, PLLC as follows:

I.   The Court enter judgment that Elio Serpa, PLLC has:

    a.   violated the Section 43(a) of the Lanham Act (15 U.S.C. 1125(a)); and

    b.   engaged in trademark infringement in violation of the laws of Florida;

II.   The Court grant injunctive relief requiring Elio Serpa, PLLC, its owner, Elio Serpa, and all of those in active concert and participation with the foregoing person and entity, to:

    a.   permanently cease engaging in any activity that infringes WRA RESLLC's WRA Marks or constitutes unfair competition with WRA RESLLC;

    b.   permanently remove from commerce any goods or products being offered that bear any of the WRA Marks, including the Challenged Mark, or any similar designation thereto;

    c.   permanently prevent the domain name for Elio Serpa's website at elioserpa.com or Elio Serpa, PLLC's other online accounts from publishing or otherwise displaying content that creates the false impression that Elio Serpa's website is sponsored, licensed, or authorized by WRA RESLLC; and

    d.   permanently refrain from registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark WRA or any other mark that infringes or is likely to be confused with WRA RESLLC's WRA Marks, or any goods or services of WRA RESLLC; and

    e.   engage in corrective advertising, as necessary;

III.    The Court direct the U.S. Patent & Trademark Office to cancel, under the Lanham Act, 15 U.S.C. § 1119, Elio Serpa, PLLC's U.S. Trademark Registration No. 6,651,766 for the mark WRA BUSINESS & REAL ESTATE (and design);

IV.    The Court awarding damages, including:

    a.   an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

    b.   directing that Elio Serpa, PLLC account to and pay over all profits realized by its wrongful acts, enhanced as appropriate to compensate for the damages caused thereby;

    c.   punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement;

    d.   declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding WRA RESLLC its costs and reasonable attorneys' fees thereunder; and

    e.   awarding WRA RESLLC interest, including prejudgment and post-judgment interest, on the foregoing sums.

V.    Awarding such other and further relief as the Court deems just and proper.

Dated: June 17, 2025                    Respectfully submitted,

**CARLTON FIELDS, PA**

*/s/ Eden Marcu*
Eleanor M. Yost, Esq.
Florida Bar No. 1003178
John Coy Stull, Esq.
Florida Bar No. 15764
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd, Ste. 1000
Tampa, Florida 33607-5780
Tel.: (813) 223-7000
Fax.: (813) 229-4133
Email: eyost@carltonfields.com
Email: jstull@carltonfields.com

Eden Marcu, Esq.
Florida Bar No. 1032540
CARLTON FIELDS, P.A.
525 Okeechobee Blvd, Ste. 1200
West Palm Beach, Florida 33401-6350
Tel: (561) 659-7070
Fax: (561) 659-7368
Email: emarcu@carltonfields.com

*Attorneys for Defendants WRA Real
Estate Solutions LLC, G2B Business
Corp., Thiago Ataide, and Debora
Ataide*